*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0180P (6th Cir.)
File Name: 04a0180p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————

MICHAEL ANDERSON,
   *Plaintiff-Appellant/*
    *Cross-Appellee,*

  *v.*

CITY OF LAVERGNE,
   *Defendant-Appellee/*
    *Cross-Appellant,*

HOWARD MORRIS,
Individually and in his official
capacity as Chief of Police of
the City of LaVergne,
    *Defendant.*

Nos. 02-6094/6248

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 00-00313—Aleta A. Trauger, District Judge.

Argued: April 28, 2004

Decided and Filed: June 16, 2004

Before: COLE and COOK, Circuit Judges; SPIEGEL,
Senior District Judge.*

—————————

**COUNSEL**

**ARGUED:** James L. Harris, Nashville, Tennessee, for
Appellant. David Randall Mantooth, LEITNER,
WILLIAMS, DOOLEY & NAPOLITAN, Nashville,
Tennessee, for Appellee. **ON BRIEF:** James L. Harris,
Nashville, Tennessee, for Appellant. David Randall
Mantooth, LEITNER, WILLIAMS, DOOLEY &
NAPOLITAN, Nashville, Tennessee, for Appellee.

—————————

**OPINION**

—————————

COOK, Circuit Judge. Michael Anderson and the City of
LaVergne cross-appeal from the district court's grant of
summary judgment in favor of Anderson, and a jury's award
of damages, on Anderson's claims brought under 42 U.S.C.
§ 1983 alleging the deprivation of his constitutionally
protected right of intimate association. Because reasonable
jurors could conclude only that the City's policy forbidding
Anderson from dating a higher-ranking colleague rationally
furthered a legitimate governmental interest, we conclude that
the district court should have granted summary judgment for
the City rather than Anderson.

I

In 1999, Anderson, a police officer for the City of
LaVergne, began a romantic relationship with Lisa Lewis, an

—————————

*The Honorable S. Arthur Spiegel, Senior United States District
Judge for the Southern District of Ohio, sitting by designation.

administrative assistant for the police department. Three months later, Chief of Police Howard Morris ordered Anderson and Lewis to "cease all contact with each other" outside of the workplace. Morris issued this order because he believed that intra-office dating between employees of different ranks (Lewis outranked Anderson) might lead to sexual harassment claims against the department.

Despite Morris's order, Anderson and Lewis continued their relationship. When Lewis eventually told Anderson she wanted to end the relationship, a disturbance of some sort involving Anderson occurred at Lewis's apartment. The Davidson County police investigated but did not file any charges. After the LaVergne Police Department's Internal Affairs Division completed its own investigation, Morris terminated Anderson for failing to follow Morris's order to stop seeing Lewis outside of the office. Morris immediately reconsidered, however, and offered Anderson the option of resigning without the department placing any negative information about the incident at Lewis's apartment in his employment record. Anderson accepted this offer, resigning on July 29, 1999.

In April 2000, Anderson filed this suit against the City of LaVergne and Morris (individually and in his official capacity), alleging that Morris's order violated Anderson's First and Fourteenth Amendment right of intimate association, and seeking damages under § 1983. Defendants moved for summary judgment. The district court granted the motion with respect to the claims against Morris in his individual capacity but sua sponte granted summary judgment in favor of Anderson on his claims against the City and Morris in his official capacity (the court later dismissed this claim against Morris as redundant with the claim against the City). The district court ruled that the policy prohibiting intra-office dating was not rationally related to a legitimate government interest because the interest the policy advanced—avoiding sexual harassment claims—was not a "police interest." A jury awarded Anderson $10,283.86 in

back pay and $5,500 in intangible damages. Both parties appeal—the City seeking a reversal of the district court's denial of its motion for summary judgment, and Anderson seeking a new trial on the amount of damages.

## II

In granting summary judgment for Anderson, the district court misapplied cases involving expressive speech claims to Anderson's intimate association claim. Moreover, the district court erroneously concluded that the police department's policy lacked a rational relationship to a legitimate government interest. Thus, even though the district court articulated the correct standard—rational basis—for reviewing the police department's policy, it erred in its application of that standard. We first explain why rational basis review applies to Anderson's intimate association claim, and then discuss why the police department's prohibition against intra-office dating satisfies the rational basis test.

### A. Intimate Association

The Constitution protects two distinct types of association: (1) freedom of expressive association, protected by the First Amendment, and (2) freedom of intimate association, a privacy interest derived from the Due Process Clause of the Fourteenth Amendment but also related to the First Amendment. *See Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984); *Akers v. McGinnis*, 352 F.3d 1030, 1035 (6th Cir. 2003); *Corrigan v. City of Newaygo*, 55 F.3d 1211, 1214–15 (6th Cir. 1995). With respect to expressive association, the Supreme Court "has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts*, 468 U.S. at 618. Concerning intimate association, the Supreme Court "has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the

State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Id.* at 617–18.

The personal relationship at issue in this case does not involve constitutionally protected expressive activity, and Anderson does not assert that the City denied his right to expressive association. Instead, this case involves the City's alleged intrusion into Anderson's personal relationship with Lewis in violation of his right of intimate association.

The Supreme Court has explained that the right to intimate association "receives protection as a fundamental element of personal liberty." *Id.* at 618. The kinds of personal associations entitled to constitutional protection are characterized by "relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." *Id.* at 620. In *Board of Directors of Rotary International v. Rotary Club of Duarte*, the Court emphasized that although the "precise boundaries" of the intimate association right were unclear, constitutional protection was not restricted to relationships among family members. 481 U.S. 537, 545 (1987). Instead, the Constitution "protects those relationships . . . that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctly personal aspects of one's life.'" *Id.* (quoting *Roberts*, 468 U.S. at 619–20). Therefore, in addition to marriage, courts have recognized both personal friendships and non-marital romantic relationships as the types of "highly personal relationships" within the ambit of intimate associations contemplated by *Roberts*. *See, e.g., Akers*, 352 F.3d 1039–40 ("Personal friendship is protected as an intimate association.").

Given these precedents, we find, at least for summary judgment purposes, that Anderson's relationship with Lewis was an "intimate association." Construing the facts in a light

most favorable to Anderson, he and Lewis lived together at some point, were romantically and sexually involved, and Anderson was monogamous in the relationship. The relationship therefore involved an attachment to an individual with whom Anderson shared the "distinctly personal aspects of [his] life." *Roberts*, 468 U.S. at 620.

But the relationship's status as an "intimate association" does not end our inquiry. We must next consider whether the City's policy prohibiting intra-office dating constituted a "direct and substantial interference" with Anderson's intimate associations. *Akers*, 352 F.3d at 1040. A "direct and substantial interference" with intimate associations is subject to strict scrutiny, while lesser interferences are subject to rational basis review. *Id.* As explained in *Akers*, this court has developed a general rule that we will find "direct and substantial" burdens on intimate associations "only where a large portion of those affected by the rule are absolutely or largely prevented from [forming intimate associations], or where those affected by the rule are absolutely or largely prevented from [forming intimate associations] with a large portion of the otherwise eligible population of [people with whom they could form intimate associations]." *Id.* Because Anderson continued to enjoy the ability to form intimate associations with anyone other than fellow police department employees of differing rank, the department's policy is subject to rational basis review.

### B. Rational Basis Review

Contrary to the district court's conclusion, the City's policy is rationally related to a legitimate government interest. The City barred dating relationships between police department employees of different ranks to promote its interest in avoiding sexual harassment suits. Such preventive policies are common among government employers. For example, this court has upheld policies prohibiting marriage among municipal employees, *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 712 (6th Cir. 2001), and requiring the transfer

of one spouse if two employees of the same school marry, *Montgomery v. Carr*, 101 F.3d 1117, 1130–31 (6th Cir. 1996).

Moreover, the district court's proposition that the City's rational interest could only be one relating to the substance of police work (such as security or investigation) lacks legal support. The case law clearly recognizes that to be rational, the basis for an employment policy need not relate to the specific, substantive purpose of the organization but may concern general employment practices, because such practices are critical to the organization's overall functioning. *See, e.g., Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1137–38 (6th Cir. 1995) (upholding policy requiring transfer of one spouse as rationally related to legitimate government interests of avoiding potential conflicts in the workplace and preventing deterioration of workplace morale); *Parks v. City of Warner Robins, Georgia*, 43 F.3d 609, 615 (11th Cir. 1995) (upholding policy requiring resignation of one spouse as means of "avoiding conflicts of interests between work-related and family-related obligations; reducing favoritism or even the appearance of favoritism; preventing family conflicts from affecting the workplace; and, by limiting inter-office dating, decreasing the likelihood of sexual harassment in the workplace"). Thus, the district court erred in concluding that the police department's policy was not reasonably related to a legitimate government interest. Because its policy satisfies the rational basis standard, the City did not violate Anderson's constitutional rights. The City therefore was entitled to summary judgment on Anderson's claims under § 1983.

### III

For the foregoing reasons, we reverse the district court's grant of summary judgment in favor of Anderson, vacate the damages and attorney's fee awards, and remand with instructions to enter judgment for the City on all claims.